# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL DOCKET NO. 3:02CV281-V

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| $39,000 IN UNITED STATES CURRENCY ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the following motions and memoranda: (1) The United States' "Complaint for Forfeiture In Rem," filed July 6, 2002 (Document #1); (2) Sean Armand Payton's (the "Claimant") "Answer to [sic] Complaint," filed July 24, 2003 (Document #6); (3) The United States' "Motion for Judgment on the Pleadings" and "Memorandum in Support of Motion for Judgment on the Pleadings," both filed on October 26, 2004 (Document ##8, 9); (4) Claimant's "Motion to Vacate or Reconsider Judgment on the Pleadings," filed November 2, 2005 (Document #13); (5) The United States' "Response to Motion to Vacate or Reconsider," filed November 11, 2005 (Document #14); (6) Claimant's "Memorandum in Support of Motion to Vacate or Reconsider," filed December 9, 2005 (Document #15); (7) Claimant's "Verified Claim," filed June 5, 2006 (Document #18); (8) Claimant's "Memorandum in Opposition to Government's Motion for Judgment on the Pleadings," filed June 5, 2006 (Document #19); and (9) Government's "Reply to Claimant's Response to Motion for Judgment on the Pleadings," filed July 7, 2006 (Document #20); and (10) Government's Supplemental Reply, filed September 14, 2006 (Document #21). This matter is now ripe for resolution by the Court.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In or about March 2001, a confidential informant (the "CI") contacted Special Agent Michael Brooks and Detective Scott Shipman (the "Officers") with information regarding Claimant. (Compl. Aff. p. 1). Claimant had previously been convicted of Possession with the Intent to Sell or Deliver Cocaine in May of 1991. (*Id.*) The CI stated that Claimant lived in, and conducted a drug business out of, room 216 of the Suburban Lodge[1] in Charlotte, North Carolina. (*Id.*) The hotel manager later confirmed that Claimant had occupied Room 216 since May of 2000, and later moved into Room 332 along with a subject named Antonio Harris. (*Id.* at 1-2). That manager also identified a subject named Henry Pryor as an associate of the Claimant that lived in Room 111. (*Id.* at 2). Henry Pryor was known as "Big Henry" and, according to the CI, would let Claimant's customers into the hotel through the side door in order to avoid the hotel's front desk. (*Id.* at 1).

The CI also identified a storage facility near the Suburban Lodge where the Claimant hid drugs and drug proceeds. (*Id.*) According to the CI, the Claimant transported drugs and money from the Suburban Lodge using a green mini-van with large rims. (*Id.*) An interview with the managers of Depot Self Storage at 9400 Bob Beatty Road in Charlotte, North Carolina found that Claimant rented Unit F-17 for $60.00 per month. (*Id.*) The unit was ten feet by ten feet in size, and had been rented by the Claimant since May of 2000. (*Id.*) The managers found the Claimant's pattern of entering and staying only a short time before leaving, suspicious. (*Id.*) Officers initiated an investigation of the Claimant. (*Id.* at 2).

---

[1]The Suburban Lodge is listed as located at both 8615 Hankins Road and at Harris Boulevard in Detective Shipman's affidavit. Hankins Road is connected to Harris Boulevard, and either reference appears to be to the same Suburban Lodge location.

The CI additionally stated, and a Miami DEA agent subsequently confirmed, that, under the auspices of a church youth trip, the Claimant was traveling to Miami, Florida, to purchase a large amount of cocaine for transport back to Charlotte, North Carolina. Officers obtained a federal search warrant for Room 332 of the Suburban Lodge and Unit F-17 of Depot Self Storage. (*Id.*) When the Claimant returned from Miami on March 26, 2001, officers followed him to the hotel and executed the search warrant. (Compl. p 2). During the course of the search in Room 332 of the Suburban Lodge, the officers seized drug paraphernalia including: scales, crack baggies, sandwich baggies, two (2) Pyrex bowls used for cooking cocaine that still contained cocaine residue, a cell phone, pager, wallet and assorted papers. (Compl. Exh. p. 2). In Room 124, occupied by Alphonso Smith (who was with Claimant and gave consent to search), officers found twenty-five (25) grams of crack cocaine and twenty (20) grams of marijuana. (*Id.*) Smith was arrested and charged with Possession with the Intent to Sell/Distribute Cocaine and Possession of Marijuana. (*Id.*) Claimant Sean Armand Payton was convicted of trafficking in cocaine, and sentenced to 35-42 months in prison. (Pl.'s Resp. Exh. 1).

The search of Unit F-17 at Depot Self Storage uncovered plastic wrappings with cocaine residue, more plastic sandwich baggies, a box of baking soda, a box containing twenty (20) glass pipes, and a Sentry Safe secured by combination lock. (*Id.*) The safe contained $39,000 in United States currency. (*Id.*) A K-9 drug dog indicated the presence of illegal narcotics on the money. (*Id.* at 3.). The $39,000 in United States currency was seized in connection with the federal criminal prosecution of the Claimant.

On April 8, 2002, the Claimant submitted a claim to the Forfeiture Counsel of the Drug Enforcement Agency ("DEA"). (Claimant's Mot. ¶ 1). The United States commenced this civil

forfeiture action by filing a Complaint for Forfeiture In Rem on July 9, 2002 in this Court. (Document #1). The Government seeks forfeiture of the Defendant property "because it is the proceeds of and/or was used to facilitate drug trafficking and/or money laundering crimes." (Compl. ¶ 1.) The Government filed a Public Notice of Action and Seizure of Property, on July 9, 2002. However, the Government did not provide Claimant direct notice of the action until almost a year later, on July 1, 2003. (Claimant's Mot. ¶ 4.) Claimant then filed a Verified Answer on July 24, 2003.

On October 26, 2004, the Government moved for judgment on the pleadings. Claimant did not respond. On October 24, 2005, this Court entered an Order granting the Government's Motion for Judgment on the Pleadings. (Document #11). It is from that Order that Claimant sought relief in his "Motion to Vacate or Reconsider Judgment on the Pleadings." (Document #15). The Claimant's "Motion to Vacate or Reconsider Judgment on the Pleadings" was granted on May 24, 2006. Thus, the Government's original "Motion for Judgment on the Pleadings" is again before this Court.

Given the procedural history, a brief summary of the Court's earlier rulings follows.

## II. DISCUSSION OF MOTIONS

### A. October 2005 Order Granting Judgment on the Pleadings

On October 24, 2005, this Court granted the Government's Motion for Judgment on the Pleadings for the Claimant's failure to timely file an answer,[2] and failure to follow the strict

---

[2]In granting the Government's Judgment on the Pleadings originally, this Court incorrectly applied a 10-day time limit for the Claimant's answer. (Document #11, p. 5). Under 18 U.S.C. §983, Claimant is provided additional time to submit a claim even though Supplemental Rule (C)(6) governs the manner in which the claim must be filed. See 18 U.S.C. §983(a)(4)(A); FED. R. CIV. P. SUPP. R. (C)(6)(A). The correct time limit for the Claimant's answer is 30 days, and the Claimant's answer was

procedural requirements of Supplemental Rule (C)(6) requiring a separate verified statement (or "claim") and answer in a judicial forfeiture proceeding.[3] FED. R. CIV. P. SUPP. R. (C)(6). The Court noted that authority supported the Government's position – to not require strict compliance with the Verified Statement or Claim requirement of Rule (C)(6) would be tantamount to ignoring the procedural requirements. *See, generally United States v. Premises Known As Lots 14, 15, 16, 19, 47, and 48*, 682 F.Supp. 288 (E.D.N.C. 1987); 2 Am. Jur. 2d Admiralty §179 (2005) ("Generally, a district court does not abuse its discretion in dismissing claims where the claimants fail to file any claim or answer within the time prescribed and fail to advance any reason that would warrant relief of the consequences of their own inaction."); CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3223 (2nd ed. 2005). The Court also cited persuasive authority explaining that, in certain circumstances, a Court has discretion to depart from the strict compliance standard. *United States v. Funds From Prudential Sec., et al.*, 300 F.Supp.2d 99 (D.D.C.2004). The Court found no basis for departure from the strict procedural requirements given Claimant's failure to respond and his representation by competent counsel. This Court concluded that Claimant lacked statutory standing to contest the forfeiture action. Prudential, 300 F.Supp.2d at 103 (explaining that in order to have statutory standing, claimant must have a sufficient interest in the property and must have complied with the applicable claim filing requirements).

---

timely filed.

[3] Excluding the "Section III, A" discussion of timeliness, the October 2005 Order is incorporated herein by reference.

**B. May 2006 Order Granting Claimant's Motion To Vacate Judgment On The Pleadings**

In his "Motion to Vacate or Reconsider Judgment on the Pleadings," Claimant, through counsel, blamed his failure to respond to the Government's motion solely on attorney error. (Butler Aff. ¶¶ 8-13). This Court cited Federal Rule of Civil Procedure 60(b)(1), which provides the applicable standard for setting aside a final judgment against this Claimant. *See United States v. $23,000*, 356 F.3d 157, 165 (1st Cir. 2004). First, the Court found that the Claimant acted swiftly to correct his failure to respond, which was caused by "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). Second, the Court found that the Government would not be prejudiced in setting aside the judgment. *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 810-12 (4th Cir. 1988). Lastly, this Court found *"some possibility"* that Claimant may demonstrate a meritorious defense.[4] (*Id*. at 810-12.) The Court's evaluation of Claimant's ability to demonstrate a meritorious defense contemplated that Claimant may be able to overcome the procedural defects. The Court noted it did "not have enough information before it to make a final determination regarding . . . whether there was plausible government misinformation. Further, the Court considered a document executed in February 1990 purporting to be the Last Will and Testament of Claimant's father and designating Claimant the beneficiary of a life insurance policy in the amount of $20,000 and federal bonds in the amount of

---

[4] The undersigned expressly noted that the Court's order vacating judgment on the pleadings should <u>not</u> be taken to suggest that Claimant will ultimately succeed on the merits. Indeed, the Government is correct in pointing out Claimant's failure to present evidence in support of his claim that these funds were the result of an inheritance and never used to facilitate drug trafficking. (Document 14-1).

$30,000.⁵  This Court noted that resolution of a case on the merits is favored in the judicial system, and vacated its Memorandum and Order granting the Government's Judgment on the Pleadings to allow the Claimant to file a response.⁶

### C. Revisit of The United States' Motion for Judgment on the Pleadings

Claimant having now filed a response, this Court considers anew the Government's "Motion for Judgment on the Pleadings." The undersigned therefore considers what, if anything, has changed to warrant denying the Government's motion and allowing this case to proceed on its merits.

As noted in the Court's previous Orders, despite Claimant's initial failure to file a separate verified claim and answer as required by Supplemental Rule (C)(6), and his failure to submit a verified claim with a response to the Government's Motion for Judgment on the Pleadings, this Court could exercise its discretion and construe the Claimant's answer as both a timely filed answer *and* claim. *See*, *United States v. One Urban Lot*, 885 F.2d 994, 999 (1st Cir.1989) (holding that "where the claimant timely filed a *verified* answer containing all the information required in the claim, the answer may be deemed to have fulfilled the function of a claim in terms of establishing the owner's standing")(emphasis in original); *United States v. $4,629 In U.S. Currency*, 359 F.Supp.2d 504, 507 (W.D.Va.2005) (accepting *pro se* claimant's single filing with his signature as verified statement and answer).

---

⁵ Claimant's production is deficient in that he fails to supply the Court with the type of documentation one would expect to accompany a legitimate inheritance. For instance, Claimant does not produce proof of the date of the deceased's death, any evidence that the will proceeded to probate in the State of New York, or any other documentation indicating that Claimant ever received these monies from the decedent's estate. Under these facts, it is doubtful Claimant Payton's claim could survive on the merits.

⁶ The Court's May 2006 Order is also incorporated herein by reference.

Notwithstanding, there are no extenuating circumstances that warrant an exception from the normally strict procedural requirements of Supplemental Rule (C)(6). *See, United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir. 1986) (applying Supplemental Rule (C)(6) in conjunction with 21 U.S.C. §881 forfeiture). Claimant contends that government misinformation explains his failure to properly follow the procedures of Supplemental Rule (C)(6) and file a separate Claim and Answer. (Claimant's Mot. ¶8.) More specifically, Claimant alleges the correspondence from the DEA[7] led him to believe his administrative claim filed with the Drug Enforcement Administration would be forwarded to this Court, and serve as his verified claim under Supplemental Rule (C)(6). However, Claimant's attorney has prior experience with civil forfeiture proceedings[8], and has followed the proper procedure of filing a separate claim and answer in the past. In fact, Claimant's attorney has followed procedure in civil forfeiture proceedings where the exact form notice containing identical language was used by the DEA. *(See United States v. $101,514.00 in US Currency*, supra; Gvmt. Suppl. Reply Exh. 1) While the Court might not ordinarily subject Claimant to the harsh results of counsel's mistake, the circumstances here simply do not justify departure from the prescribed procedural scheme. Claimant fails to make the requisite showing that the statutory procedural criteria should be waived under these facts. For these reasons, the Court will grant the Government's Motion for Judgment on the Pleadings.

---

[7]This correspondence from the DEA read: "Your claim has been accepted and this matter has been referred to the United States Attorney for the Civil Division in the [Western District of North Carolina]. Please direct all inquires regarding this matter to that office." (Govt.'s Reply to Mot. to Vacate Exh. 1).

[8]*United States v. $101,514.00 in US Currency*, Docket No. 3:01CV623-H; *United States v. $1,894.00 in US Currency*, Docket No. 3:00CV136; and others.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Government's Motion for Judgment on the Pleadings is **GRANTED**.

Signed: February 5, 2007

Richard L. Voorhees
United States District Judge